No. 85-592

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

---

IN THE MATTER OF THE MALE CHILD
BORN JULY 15, 1985 TO L. C.;

IN RE THE TERMINATION OF PARENTAL RIGHTS
OF L.A.C. AND D.S.C.

---

APPEAL FROM: District Court of the Sixth Judicial District,
In and for the County of Park,
The Honorable Thomas Olson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Yardley & Yardley; Jack Yardley, Livingston, Montana

For Respondent:

Lineberger & Davis; Peter S. Lineberger, Bozeman,
Montana

---

Submitted on Briefs: Feb. 26, 1986

Decided: May 15, 1986

Filed MAY 1 5 1986

_____
Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

The birth mother, L.A.C., appeals the District Court's order which determined, overall, not to interfere with the child's adoption in Idaho. Although we sympathize with L.A.C.'s natural maternal feelings, the outcome of this appeal is dictated by legal procedure. We affirm.

The primary issue for us to consider here concerns the jurisdiction of Montana district courts over a Montana born child who has been transferred and adopted in Idaho. If the Montana district courts had lost jurisdiction, then the adoption of the child in Idaho was legal, and this Court has no jurisdiction to interfere.

Montana and Idaho have adopted the Interstate Compact on Placement of Children. Section 41-4-101, MCA; Section 16-2101, I.C.A. The states have also adopted versions of the Uniform Child Custody Jurisdiction Act. Section 40-7-101 et seq., MCA; Section 32-1101 et seq., I.C.A. Both the Compact and the Uniform Act have the goal of preventing jurisdictional tug-of-wars over children by the member states. This case presents a contingency not anticipated by the statutes, but which can be solved by application of the statutes with a recognition of their broader principles and goals.

L.A.C. was an expectant mother residing in Park County, Montana. She had recently been divorced from her husband for a second time and doubted her ability and desire to raise the child. Two months prior to the birth of her child, she contacted AID Adoption Agency, Inc. (AID) of Idaho for assistance in placing the child in a proper home for adoption. AID provided counselling to L.A.C. and assisted her in selecting a suitable family to raise her child. L.A.C.

2

expressed her desire that the child be transferred to the prospective parents in Idaho immediately after birth. In compliance with L.A.C.'s wishes, AID set out to expedite the process of a legal transfer of the child to Idaho. Papers were drawn and administrative agencies contacted. The child was born, and two days later L.A.C. signed forms relinquishing her parental rights and consenting to adoption. The relinquishment form states as follows:

### CONSENT FOR RELINQUISHMENT
### OF PARENTAL RIGHTS

I, [L.A.C], of Clyde Park, Montana, declare that I am the natural mother of the unamed [sic] male child who was born at the Livingston Memorial Hospital in Park County, Montana on July 15, 1985.

Believing it to be in the best interests of said child, I do hereby freely, voluntarily and irrevocably release and relinquish forever all of my parental rights, privileges and claim to said child including the right to inheritance and agree that from the date of execution of this document, my interests shall be terminated and said child shall to all legal interests and purposes be relinquished to the custody of Aid Adoption Agency, Inc., a private adoption agency licensed in Montana and Idaho.

I further state that I understand that this relinquishment will be submitted by Aid Adoption Agency, Inc., for the purpose of obtaining an order to terminate my right to the said minor child and for the purpose of transferring custody to the above-referenced agency for placement with adoptive parents. I hereby waive notice to any proceeding necessary to effect the termination of my parental rights.

DATED this 11th day of July, 1985.

/s/ [L.A.C.]

SUBSCRIBED AND SWORN to before this 17th day of July 1985.

s/s June Miller

3

Notary Public for the State of Montana
Residing at Wilsall, Montana. My com-
mission expires: 10-16-85

AID sent copies of the relinquishment documents and notice of placement for adoption to the appropriate authorities in Idaho. Three days after the child's birth, an AID representative took the child to the adoptive family in Idaho, as had been agreed. Three days later, L.A.C. notified the AID representative that she had changed her mind and did not want to give the child up for adoption. L.A.C. filed a petition to revoke her consent to the adoption and obtained an ex parte temporary restraining order from the Park County District Court, prohibiting adoptive placement of the child and ordering that he be returned to Montana. By this time, however, Idaho had approved the child's placement for adoption, and the child was legally placed with the adoptive family. Also at this time, AID filed its petition in the Park County District Court for an order of termination of parental rights. Montana's Department of Social and Rehabilitation Services and the AID representative attempted to arrange for the child to be brought back to Montana, but the adoptive parents would not agree to that. Instead, the adoptive parents initiated adoption proceedings in Idaho and obtained a temporary restraining order from the Idaho district court, prohibiting removal of the child from their custody until the outcome of the adoption proceedings. A final adoption order was entered in Idaho.

After that time, the Montana District Court, with a new judge presiding, held a hearing on L.A.C.'s petition to revoke her consent to adoption and relinquishment of parental rights. AID presented testimony and evidence at the hearing. The court held that L.A.C. was not a "sending agency" under

4

the Interstate Compact on Placement of Children, § 41-4-101, MCA, and, because of that it set aside the Montana court's prior restraining order. It also held that AID was not in violation of any court order, that L.A.C.'s parental rights were terminated, and that it was in the child's best interests to remain with the adoptive parents in Idaho.

L.A.C. sought a writ of supervisory control from this Court, which was denied. She now appeals.

This opinion will first consider the effect of L.A.C.'s relinquishment of parental rights on the District Court's jurisdiction. L.A.C.'s contention that she is a "sending agency" under the Interstate Compact will be discussed as a sub-issue to the District Court jurisdiction issue. We will then consider L.A.C's challenges to the adoption proceedings in Idaho. The opinion will conclude with a discussion of this Court's jurisdiction. We make no conclusion as to our jurisdiction if L.A.C.'s arguments had been correct.

L.A.C.'s conduct over a period of two months were directed at giving her child up for adoption to a family of her choice in Idaho. Towards this end she engaged the services of AID. She voluntarily signed and executed a form relinquishing her parental rights to AID. This relinquishment had legal consequences that determine the case.

The effect of L.A.C.'s execution of the relinquishment form can be found in §§ 40-6-135(1) and (7), MCA. Subsection (1) provides how a natural mother can relinquish her parental rights:

> (1) Any parent or guardian who proposes to relinquish custody of a child for purposes of placing the child for adoption may do so by executing a relinquishment by which all parental rights to the child are voluntarily relin-

5

quished to an agency of the state of
Montana or a licensed adoption agency.

Thus, L.A.C.'s parental rights were relinquished when she
executed the form. No additional procedure was required for
the relinquishment. When L.A.C. relinquished her parental
rights to AID, AID became a "sending agency" as defined by
the Interstate Compact. Section 41-4-101, Art. II, MCA. As
a sending agency, AID had the power to place the child for
adoption in Idaho. See § 41-4-101, Art. V, MCA. Consequent-
ly, the only standing L.A.C. then had in the Montana courts
was to seek a revocation of the relinquishment.

Subsection (7) provides the only method by which a
voluntarily executed relinquishment can be revoked:

> (7) Upon petition of a person who
> executed a relinquishment and of the
> agency of the State of Montana or li-
> censed adoption agency to which the
> child was relinquished, the court with
> which the relinquishment was filed may
> grant a hearing to consider whether the
> relinquishment should be revoked. A
> relinquishment may not be revoked if the
> child has been placed for adoption.
> . . . (Emphasis added.)

Thus, subsection (7) requires both the adoption agency and
relinquishing parent to petition the court before the relin-
quishment can be revoked.

We interpreted substantially similar statutory precur-
sors to the provisions just quoted in In Re Adoption of
B.G.B. (1979), 183 Mont. 347, 353, 599 P.2d 375, 379, where
we stated:

> Clearly, a construction of this section
> [(1)] along with subsection (7) of the
> same statute requires a determination
> that a strong public policy interest
> exists surrounding the finality of
> parental releases, and one who voluntar-
> ily signs a parental release cannot
> willy-nilly revoke that release.

6

We held that the procedure contained in subsection (7) is required when there is no issue of voluntariness of the parental release. B.G.B., 599 P.2d at 379. There is no issue of voluntariness here. Therefore, L.A.C. could only petition the District Court to revoke the relinquishment with AID as a co-petitioner. Section 40-6-135(7), MCA. Because AID was not a co-petitioner, the District Court was without authority to revoke the relinquishment. Moreover, by the statute the relinquishment became irrevocable when the child was placed for adoption in Idaho. We hold that once the child was placed for adoption in Idaho, and the relinquishment became irrevocable, Montana lost jurisdiction.

L.A.C. argues that she was the "sending agency," and that, under the Interstate Compact she had jurisdiction to effect return of the child. See § 41-4-101, Art. V, MCA. The Interstate Compact defines "sending agency":

> (2) "sending agency" means a party state, officer or employee thereof; a subdivision of a party state or officer or employee thereof; a court of a party state; a person, corporation, association, charitable agency, or other entity which sends, brings, or causes to be sent or brought any child to another party state;

Section 41-4-101(2), Art. II, MCA. L.A.C. relinquished her parental rights to AID who then effectuated the transfer of the child to Idaho. We find that AID was the sending agency.

L.A.C. asks us to interpret the above-quoted definition to include a parent who initiates an adoption by relinquishing her rights to an adoption agency. Such an interpretation would mean that no state or private licensed adoption agency would ever be able to act with assurance that its conduct was final. We will not interpret the definition so broadly.

7

L.A.C. also argues that the child was not properly placed for adoption in Idaho, because AID did not have approval of Idaho prior to the transfer as required by Article III of the Interstate Compact. As such, she believes she can still revoke her relinquishment of parental rights. This argument fails for two reasons: (1) L.A.C. would still require AID as a co-petitioner before the District Court could revoke the relinquishment; and (2) Idaho's notification and approval procedures are matters to be worked out between AID and Idaho. L.A.C. has no standing to attack the adoption process in Idaho because she relinquished her parental rights to AID. Under Article V of the Compact, AID then had the power to effect the transfer of the child to Idaho. We note that the only reason the transfer occurred before the formal notice and approval of Idaho was because of L.A.C's request for expediency.

Finally, L.A.C. argues that Montana still has jurisdiction because AID did not obtain a Montana District Court order terminating L.A.C.'s parental rights prior to placing the child in Idaho. She refers us to § 40-8-103(10), MCA, which defines "placement for adoption" as "the transfer of physical custody of a child with respect to whom parental rights have been terminated and who is otherwise legally free for adoption to a person who intends to adopt the child." From this she argues that because AID had not secured the termination order, the "placement" in Idaho was improper, and AID, therefore, has "unclean hands." We disagree.

First, we note that by § 40-6-135(5) it was mandatory upon the District Court to issue an order terminating parental rights when the relinquishment was filed. AID, therefore, had no reason not to assume that the order of

8

termination was forthcoming. We further note that the definition relied upon by L.A.C. does not require a judicial termination order. Rather, the definition only requires that parental rights have been terminated. The relinquishment form specifically states that L.A.C.'s parental rights were terminated when the form was executed. We hold that L.A.C.'s parental rights were terminated when she executed the form relinquishing her parental rights.

L.A.C. points to A.R.M. § 46-5.440(6) which states:

> Agencies must secure a court order terminating the parental rights of the birth parents and legal authority to place the child for adoption prior to adoptive placements.

AID had authority to place the child in Idaho under Article V of the Compact. However, L.A.C. claims that since AID had not secured the court order terminating parental rights, the placement was illegal.

Whether or not AID obtained a termination order in Montana is irrelevant to the child's adoption in Idaho. The Idaho Code does not require a judicial termination of parental rights prior to adoption. Rather, the adoption decree automatically results in a termination of parental rights. Section 16-1509, I.C.A. In Idaho only the consent of the natural parents is required in its adoption proceedings. See, §§ 16-1504 and -1509, I.C.A. The Idaho district court was presented with the natural parents' properly executed consents to adoption and relinquishments of parental rights. Once the adoption decree was entered, L.A.C.'s parental rights were judicially terminated by operation of § 16-1509, I.C.A. We can see nothing illegal or improper about the child's adoption in Idaho.

9

We will now consider this Court's authority to interfere with the Idaho district court's adoption decree. Section 40-7-114, MCA, provides in part:

> The courts of this state shall recognize and enforce an initial or modification decree of a court of another state which has assumed jurisdiction under statutory provisions substantially in accordance with this chapter . . .

Idaho had jurisdiction over the adoption proceedings under a statute substantially similar to § 40-4-211, MCA. See § 32-1103, I.C.A. Therefore, by § 40-7-114, MCA, we must recognize the Idaho adoption decree and have no jurisdiction to interfere. We note that a similar decision is mandated by the Full Faith and Credit Clause of the United States Constitution and Montana statutes. See U.S. Const., Art. IV, § 1, and § 26-3-203, MCA.

Because this Court has no jurisdiction to interfere with the child's adoption, we need not consider appellant's challenge to the District Court's finding that the child's best interests would be served by remaining with its adoptive parents. We will comment, however, that the finding is supported by substantial evidence.

The District Court is affirmed in its order terminating parental rights and its recognition of the child's legal adoption in Idaho.

_____
Chief Justice

We concur:

_____

_____

_____

_____
                Justices

11