REVISED MARCH 5, 2010
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 18, 2010

Charles R. Fulbruge III
Clerk

No. 09-30036

 OREN ADAR, Individually and as Parent and Next Friend of
J C A-S a minor; MICKEY RAY SMITH, Individually and as Parent and
Next Friend of J C A-S a minor

Plaintiffs-Appellees

v.

DARLENE W SMITH, In Her Capacity as State Registrar and
Director, Office of Vital Records and Statistics, State of
Louisiana Department of Health and Hospitals

Defendant-Appellant

Appeal from the United States District Court for the
Eastern District of Louisiana

Before REAVLEY, JOLLY, and WIENER, Circuit Judges.

WIENER, Circuit Judge:

Plaintiffs-Appellees Oren Adar and Mickey Ray Smith (the "Adoptive Parents"), individually and next friends of their adopted minor son, Plaintiff-Appellee J C A-S ("Infant J"), all three referred to collectively as "Plaintiffs-Appellees," brought this injunction action against Defendant-Appellant Darlene W. Smith, the Louisiana State Registrar (the "Registrar"), to force her to issue a new original birth certificate ("Certificate") for Infant J, who was born in Louisiana. The Adoptive Parents are unmarried adult males who obtained a

joint adoption decree for Infant J in a New York state court. After obtaining that decree, the Adoptive Parents applied to the Registrar for a Certificate listing both men as parents of Infant J. The Registrar refused to issue the Certificate, citing Louisiana statutes that prohibit the in-state adoption of children by unmarried couples. On a motion for summary judgment, the district court issued a mandatory injunction, commanding the Registrar to issue the Certificate on grounds that (1) Louisiana owes full faith and credit to the New York adoption decree, and (2) LA. REV. STAT. ANN. § 40:76 authorizes the issuance of a Certificate listing both men as adoptive parents of Infant J. The Registrar timely appealed. We affirm.

## I. FACTS AND PROCEEDINGS

### A. Facts

Infant J is a male who was born in Shreveport, Louisiana, in 2005. In April 2005 the Adoptive Parents, who then resided in Connecticut, obtained an agency adoption of Infant J in the Family Court of Ulster County, New York, pursuant to New York state law that authorizes joint adoptions by unmarried, same-sex couples.

After obtaining this New York adoption decree, the Adoptive Parents arranged for a Report of Adoption to be forwarded from the New York Department of Health to the Louisiana Department of Health and Hospitals, Office of Public Health, Vital Records and Statistics. The Adoptive Parents sought to have a Certificate issued and recorded for Infant J, reflecting his new name and his relationship to the Adoptive Parents. Before deciding whether to comply with that request, the Department of Health and Hospitals requested an opinion from the State's Attorney General whether Louisiana was required to issue the requested Certificate. The Attorney General issued an opinion that

Louisiana does not owe full faith and credit to the instant New York adoption judgment because it is repugnant to Louisiana's public policy of not allowing joint adoptions by unmarried persons.

Approximately one week after receiving this opinion, the Registrar wrote to the Adoptive Parents informing them of her decision to decline to issue the Certificate. The Registrar's letter stated that because (1) Louisiana only authorizes in-state adoptions by single adults or married couples; (2) LA. REV. STAT. ANN. § 40:76 vests the Registrar with full discretion in issuing amended birth certificates for out-of-state adoptions of Louisiana-born children; and (3) LA. REV. STAT. ANN. § 40:34(D) only authorizes the Registrar to issue amended Certificates in accordance with Louisiana law, the State's Office of Vital Records and Statistics was "not able to accept the New York adoption judgment to create a new birth certificate." As additional support for not issuing the Certificate, the Registrar cited the State Attorney General's opinion that Louisiana does not owe full faith and credit to the instant New York judgment.

B. Proceedings

In October 2007, the Plaintiffs-Appellees filed suit in the Eastern District of Louisiana against the Registrar in her official capacity, seeking (1) a declaration that the Registrar's refusal to issue the Certificate violates both the Full Faith and Credit Clause (the "Clause") and the Equal Protection Clause of the United States Constitution and (2) a mandatory injunction requiring the Registrar to issue a Certificate that identifies both Adoptive Parents as Infant J's parents.

The Registrar filed a motion to dismiss for lack of jurisdiction which the district court denied. After the Registrar filed an answer to the amended complaint, the Adoptive Parents filed a motion for summary judgment. In it

3

they asserted that (1) by its plain language, LA. REV. STAT. ANN. § 40:76 expressly requires the issuance of a Certificate for Infant J reflecting that both Adoptive Parents are his parents, (2) Louisiana owes full faith and credit to the New York state adoption decree, and (3) failure to issue a Certificate for Infant J denies the Plaintiffs-Appellees equal protection under the United States Constitution.

In granting summary judgment to the Plaintiffs-Appellees, the district court held that Louisiana owes full faith and credit to the New York adoption decree and that there is no public policy exception to the Clause. The court also went on to state that a forum state's enforcement of such a decree from an adjudicating state is subject to the "evenhanded" enforcement of the laws of the forum state. The district court then examined the Louisiana statute that governs the recording of out-of-state adoptions of Louisiana-born children and held that the plain language of the statute mandates that, on receipt of a duly certified copy of the New York adoption decree, the Registrar had to issue a Certificate for Infant J that contains the names of the Adoptive Parents as his parents. As the trial court granted summary judgment on grounds of Full Faith and Credit and Louisiana law, it did not reach the Plaintiffs-Appellees' equal protection claim.

Before filing her timely notice of appeal, the Registrar filed a motion in the district court seeking either a new trial or dismissal. In that motion, the Registrar asserted for the first time that the Adoptive Parents lacked standing and, in the alternative, that the district court should abstain from interpreting LA. REV. STAT. ANN. § 40:76 and instead certify the question to the Louisiana Supreme Court. After briefing and a hearing, the district court denied the Registrar's motion for a new trial or dismissal, as well as her motion for a

temporary stay. Subsequently, the Registrar filed a motion in this court seeking a stay pending this appeal which we granted.

## II. STANDARD OF REVIEW

We review questions of jurisdiction, including standing, de novo.[1] If the district court expressly or implicitly resolves any factual disputes in making its jurisdictional ruling, we review such findings for clear error.[2] We review a grant of summary judgment de novo under the same standards applied by the district court.[3] Summary judgment is appropriate when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law.[4] We review determinations of fact in the light most favorable to the nonmoving party, and we review questions of law de novo.[5] We also review the district court's determinations of state law de novo, giving no deference to such rulings.[6]

## III. ANALYSIS

This case poses an issue of first impression in this circuit; only one other circuit has addressed a similar one.[7] The instant dispute implicates the

---

[1] Bonds v. Tandy, 457 F.3d 409, 411 (5th Cir. 2006).

[2] See Pederson v. Louisiana State University, 213 F.3d 858, 869 (5th Cir. 2000) (citation omitted).

[3] Floyd v. Amite County Sch. Dist., 581 F.3d 244, 247 (5th Cir. 2009).

[4] Id.

[5] Id.

[6] Tradewinds Environmental Restoration, Inc. v. St. Tammany Park, LLC, 578 F.3d 255, 258 (5th Cir. 2009) (citing Salve Regina Coll. v. Russell, 499 U.S. 225, 239-40 (1991)).

[7] The Tenth Circuit dealt with similar facts and claims in Finstuen v. Crutcher, 496 F.3d 1139 (2007). We summarize it briefly. In Finstuen, three same-sex couples challenged an

questions (1) whether Louisiana owes full faith and credit to the subject New York adoption decree and (2) whether full faith and credit requires Louisiana, under the plain language of its own statute and under the constitutional requirement of "evenhanded" enforcement of that judgment, to issue a Certificate for Infant J that lists both Adoptive Parents as his parents.

The Registrar is now challenging the standing of the Plaintiffs-Appellees[8] to bring this action. As standing is jurisdictional, we address that issue before addressing full faith and credit and state law.

A. Standing

The Registrar contends that the Plaintiffs-Appellees have not satisfied Article III's standing requirements; specifically, that the harms they allege are

---

amendment to Oklahoma's foreign adoption statute that prohibited the State from recognizing adoptions by same-sex couples. 496 F.3d at 1142. The district court held that the amended statute was unconstitutional because it violated the Full Faith and Credit Clause, and the court ordered Oklahoma to issue a revised birth certificate to one of the couples. The Tenth Circuit affirmed on full faith and credit grounds. Id. at 1156.

The appeals court reasoned that each State owes full faith and credit to every other state's judgments. Id. at 1153. That court also noted that the forum state's mechanisms for the enforcement of such a judgment are determined by the lex loci — therefore the rights of the judgment flowed from the law of Oklahoma, not California, the state of adoption. Id. at 1154. The court ruled that, because the amended adoption statute's categorical refusal to recognize out-of-state judgments was unconstitutional, and because Oklahoma had a duty to recognize the California adoption decree, the Doe plaintiffs were entitled to whatever rights would be afforded them from the judgment under Oklahoma law. Id. at 1154-56. Concluding that Oklahoma's foreign adoption statute, sans the amendment, provided for the issuance of a birth certificate to the Does, the Tenth Circuit held that denial of the birth certificate would be a violation of the "evenhanded" requirement in applying local enforcement mechanisms to foreign judgments and affirmed the district court's grant of summary judgment. Id.

[8] The Registrar argues throughout her briefing that the "Appellees" lack standing to pursue this action, and she does not differentiate between the Adoptive Parents and Infant J for purposes of her argument. As the Adoptive Parents bring suit both individually and as next friend to Infant J, however, the standing of both the parents and Infant J must be determined independently. We construe the Registrar's arguments on this matter as applying with equal measure to each Plaintiff-Appellee.

not sufficient injuries-in-fact. The harms alleged are (1) difficulties encountered in enrolling Infant J in Smith's health insurance plan; (2) problems encountered with airline personnel who suspected that the Adoptive Parents were kidnappers of Infant J; and (3) denial of the "emotional satisfaction" of "seeing both of their names on the birth certificate." In supplemental briefing, the Registrar also contends that LA. REV. STAT. ANN. § 40:76 does not grant a right to judicial relief.

The Adoptive Parents counter that the issue of standing is more properly framed as two broader questions: (1) whether the Registrar's refusal to issue a fully compliant Certificate reflecting the entire parent-child relationship created by the New York adoption decree results in a legally cognizable injury in and of itself; and (2) whether the "barriers" imposed by the Registrar's refusal to list both Adoptive Parents in a Certificate, as evidenced by "past difficulties," constitutes a legally cognizable injury for purposes of standing. In supplemental briefing, the Adoptive Parents also invoke LA. REV. STAT. ANN. § 40:77 which they assert constitutes a non-discretionary mandate that the Registrar issue certified copies of Certificates to out-of-state adoptive parents of Louisiana-born children.

Standing is a question of justiciability that poses two questions: (1) whether the parties' claims present a constitutional case or controversy and (2) whether federal court is the proper forum to decide this question.[9] As the jurisdiction of the federal courts is limited, parties may not seek redress there

---

[9] Comer v. Murphy Oil USA, 585 F.3d 855, 868 (5th Cir. 2009). See also Apache Bend Apartments, Ltd. v. United States, 987 F.2d 1174, 1176-77 (5th Cir. 1993) ("The Supreme Court has noted that 't]he term 'standing' subsumes a blend of constitutional requirements and prudential considerations.'") (quoting Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 471(1982)).

unless they can show an actual case or controversy under Article III of the United States Constitution, i.e., an "injury-in-fact."[10]

There are three aspects to the constitutional requirement for standing under Article III, viz., a showing by the plaintiffs of (1) an injury-in-fact that constitutes the invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between such injury and the conduct complained of; and (3) the likelihood that a favorable decision will redress the injury.[11] The party invoking federal jurisdiction has the burden of establishing these elements.[12] Article III standing may also obtain by virtue of a state or federal statutory right, the invasion of which confers standing.[13]

The Registrar asserts that the injuries allegedly suffered by the Plaintiffs-Appellees do not rise to the level of injuries-in-fact. The Plaintiffs-Appellees disagree, pointing to the barrier of health care coverage, the impediments to travel, and the dignitary harm of an obsolete, incorrect birth certificate, as providing the requisite injury-in-fact. We need not resolve this disagreement, however, because Plaintiffs-Appellees have sufficiently alleged, for the purposes of standing, that (1) LA. REV. STAT. ANN. §§ 40:76 and 40:77 mandate that the

---

[10] Lujan v. Defenders of Wildlife, 504 U.S 555, 560 (1992) (internal citations and punctuation omitted). The Registrar does not challenge the Plaintiffs-Appellees' prudential standing, and we limit our discussion to Article III's requirements only.

[11] Lujan, 504 U.S. at 560-61.

[12] Id. at 561.

[13] Warth v. Seldin, 422 U.S. 490, 500 (1975) ("The actual or threatened injury required by Art. III may exist solely by virtue of 'statute creating legal rights, the invasion of which creates standing . . . '") (quoting Linda R.S. v. Richard D., 410 U.S. 614, 617 n.3 (1973)).

Registrar issue a Certificate and (2) they have suffered cognizable harm by Registrar's refusal to do so.

The state of Louisiana recognizes a private right of action to correct public records. In State ex rel. Treadaway v. Louisiana State Bd. of Health, the Supreme Court of Louisiana approved of civil actions as the proper vehicle for requiring the State to correct birth certificates.[14] Treadaway dealt with the attempt of the relator to have his deceased mother's birth certificate altered to designate her race as "white" rather than "colored."[15] The relator sought alteration under the then-current statutory provision for correcting birth certificates, LA. REV. STAT. ANN. § 40:266. That statute read: "No certificate or record on file in the local registrar's office shall be altered except upon submission of sufficient documentary or sworn evidence acceptable as the basis of the alteration." The contemporary analog of that statute is LA. REV. STAT. ANN. § 40:59, which subjects any alteration procedure to regulations of the Department of Health and Hospitals and requires a showing by sworn and documentary proof. The current statute that governs birth certificate corrections for out-of-state adoptions is LA. REV. STAT. ANN. § 40:76, which – like the predecessor LA. REV. STAT. ANN. § 40:266, and LA. REV. STAT. ANN. § 40:59 –

---

[14] 54 So. 2d 343, 344 (La. 1951) ("We think that the public interest which is involved is paramount, and that in such a case what is most desirable is that the record be correct, and that whenever the attention of the Board of Health is directed by any person at interest to the possible incorrectness of a record and conclusive evidence is produced, the public interest demands that the correction be made . . . ."). See also Messina v. Ciaccio, 290 So. 2d 339, 342 (La. App. 4th Cir. 1974) (affirming the trial court's ordering of the Louisiana Bureau of Vital Statistics to alter child's birth certificate).

[15] Treadaway, 54 So.2d at 343. The fact that the relator's underlying motive for changing the certificate arose from Louisiana's then-prevailing practice of institutionalized racial discrimination (which, by virtue of his mother's racial designation, saddled the relator with legal disabilities) does not affect that case's pertinence to the instant action.

requires that specified documentary evidence be submitted before a new Certificate will be issued, and (as discussed in more detail infra) is couched in mandatory language. Accordingly, we find apposite Treadaway's holding that:

> [S]ince the matter was brought to the attention of the Board of Health by a person who was affected by the record, the Board of Health is authorized and, in fact, required by the statute to receive such evidence as might be available and, in accordance with its own rules, to make the change if the evidence submitted is found by the court to be satisfactory.[16]

Given the plain language of the governing statute and the Louisiana Supreme Court's recognition of private rights of action to correct the State's public documents, we hold that Infant J has made sufficient allegations of a statutory right to an accurate birth certificate and thus has Article III standing to compel the Registrar to issue a new Certificate.

This reasoning applies, by virtue of LA. REV. STAT. ANN. § 40:77,[17] with equal force to the allegations of the Adoptive Parents. Therefore, we hold that, like Infant J, the Adoptive Parents have made sufficient allegations of a statutory right to provide standing to pursue their claims against the Registrar.

This is not dispositive of the question of constitutional standing by itself, however, because the law is well-settled that a statute cannot grant standing to

---

[16] Id. at 344. Cf. Warth, 490 U.S. at 500 ("Essentially, the standing question . . . is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff' position a right to judicial relief.") (emphasis added).

[17] "Upon completion of the new record as provided for in R.S. 40:76 with respect to an adopted person who was born in Louisiana and adopted in another state, the state registrar shall issue to the adoptive parents a certified copy of the new record and shall place the original birth certificate and the copy of the decree and related documents in a sealed package and shall file the package in its archives." (emphasis added).

parties whose claims do not rise to the constitutional threshold.[18] When a person alleges a concrete, particularized, and individual injury by virtue of the operation of a statute, however, Article III standing to challenge that statute's execution usually obtains.[19] We therefore hold that Plaintiffs-Appellees' allegations of injury flowing from the Registrar's failure to comply with the statute satisfy the prerequisites of injury-in-fact for Article III standing purposes.[20]

## B. Full Faith and Credit

Turning to the substantive claims at issue, we first consider whether, under the United States Constitution, Louisiana owes full faith and credit to the New York adoption decree. The Registrar asserts several rationalizations why Louisiana does not owe full faith and credit to the decree as a constitutional matter, and she categorizes the argument based on them as an alternative to her argument that Louisiana's out-of-state adoption statute does not, by its plain meaning, require her to issue a new Certificate. As we need consider LA. REV.

---

[18] Gladstone Realtors v. Village of Bellwood, 441 U.S. 91, 100 (1979).

[19] See Lujan, 504 U.S. at 561-62 ("When the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred (at the summary judgment stage) or proved (at the trial stage) in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue. If he is, there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it.") (emphasis added).

[20] Although not raised by any party, we also note in passing that we and the district court have subject-matter jurisdiction over these claims. The Plaintiffs-Appellees' claim is that, by refusing to give full faith and credit to the out-of-state adoption decree, the Registrar denies them the rights afforded by Louisiana's out-of-state adoption certificating statute. This case therefore "arises under" the United States Constitution.

STAT. ANN. § 40:76 only if Louisiana owes full faith and credit to the New York decree,[21] we first address full faith and credit.

### 1. The Full Faith and Credit Clause

The Full Faith and Credit Clause of the United States Constitution reads:

Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.[22]

Congress enacted implementing legislation for the Clause in 1790[23] and has amended that legislation only once, in 1948.[24] The Supreme Court first

---

[21] That is, if Louisiana does not owe full faith and credit, then presumably LA. REV. STAT. ANN. § 40:76 would not apply because the New York adoption decree likely would not be a proper "final decree of adoption" that Louisiana would have to recognize.

[22] U.S. Const. art IV, § 1.

[23] 1 Cong. Ch. 11, May 26, 1790, ch. 11, 1 Stat. 122. ("That the acts of the legislatures of the several states shall be authenticated by having the seal of their respective states affixed thereto: That the records and judicial proceedings of the courts of any state, shall be proved or admitted in any other court within the United States, by the attestation of the clerk, and the seal of the court annexed, if there be a seal, together with a certificate of the judge, chief justice, or presiding magistrate, as the case may be, that the said attestation is in due form. And the said records and judicial proceedings authenticated as aforesaid, shall have such faith and credit given to them in every court within the United States, as they have by law or usage in the courts of the state from whence the said records are or shall be taken.").

[24] 28 U.S.C. § 1738. In the 1948 revision of the Judicial Code, the wording of the first implementing statute was amended to include state statutes within the command of the implementing statute:

> The Acts of the legislature of any State, Territory, or Possession of the United States, or copies thereof, shall be authenticated by affixing the seal of such State, Territory or Possession thereto.
> . . . .
> Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States

interpreted the Clause in Mills v. Duryee to require that an out-of-state judgment be given the same effect in the several states as it would be given in the adjudicating state.[25] Such expansive full faith and credit was later held not to be owed to a statute enacted in another state, however, when the forum state is competent to legislate on the matter.[26]

The Supreme Court's most recent full faith and credit decision dealing with judgments, Baker ex rel. Thomas v. General Motors Corp.,[27] both reiterates that full faith and credit is owed to out-of-state judgments[28] and explains the "exacting"[29] nature of this duty. Important to the instant appeal, the Court in Baker emphasized that there are no "roving public policy exceptions" to the

---

and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

[25] 11 U.S. (7 Cranch) 481, 485 (1813).

[26] Franchise Tax Bd. of California v. Hyatt, 538 U.S. 488, 494 (2003) ("As we have explained, '[o]ur precedent differentiates the credit owed to laws (legislative measures and common law) and to judgments.' Baker v. General Motors Corp., 522 U.S. 222, 232, 118 S.Ct. 657, 139 L.Ed.2d 580 (1998). Whereas the full faith and credit command 'is exacting' with respect to '[a] final judgment ... rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment,' id., at 233, 118 S.Ct. 657, it is less demanding with respect to choice of laws. We have held that the Full Faith and Credit Clause does not compel ' "a state to substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate." ' ") (citing Sun Oil Co. v. Wortman, 486 U.S. 717, 722 (1988) ((quoting Pacific Employers Ins. Co. v. Industrial Accident Comm'n, 306 U.S. 493, 501 (1939))).

[27] 522 U.S. 222 (1998).

[28] Id. at 233-35.

[29] Id. at 233.

Clause;[30] that is, the forum state may not refuse to recognize[31] an out-of-state judgment on the grounds that the judgment would not obtain in the forum state.[32] Although the duty of recognition that is owed is "exacting," however, it is not absolute. For example, even though the forum state may not refuse to enforce the judgment of the adjudicating state, the forum state is not required to substitute the adjudicating state's provisions for the enforcement of judgments for their own.[33] The substantive issues adjudicated in that state are afforded full faith and credit; within particular bounds, the provisions for enforcing that judgment are determined by the law of the forum state.

### 2. Application

As a threshold matter, there is virtually universal acknowledgment that Louisiana owes full faith and credit to the New York adoption decree and must recognize that the Adoptive Parents are Infant J's legal parents. Numerous authorities hold that a state must afford out-of-state adoption decrees full faith

---

[30] Id.

[31] Although it may be possible to collaterally attack a judgment as invalid in the forum state, e.g., when the sister state lacked jurisdiction to effect the order, the validity of the instant New York order is not at issue. The Registrar conceded that the adoption order is a valid and true judgment under New York law.

[32] Milwaukee County v. M.E. White Co., 296 U.S. 268, 277 (1935) ("In numerous cases this court has held that credit must be given to the judgment of another state although the forum would not be required to entertain the suit on which the judgment was founded . . . .").

[33] Baker, 522 U.S. at 234 ("Full faith and credit, however, does not mean that States must adopt the practices of other States regarding the time, manner, and mechanisms for enforcing judgments. Enforcement measures do not travel with the sister state judgment as preclusive effects do; such measures remain subject to the even-handed control of the forum law.") (citing McElmoyle ex rel. Bailey v. Cohen, 13 Peters 312, 325 (1839)).

and credit.[34]   The parental rights and status of the Adoptive Parents, as adjudicated by the New York court, are not confined within that state's borders and do not cease to exist at Louisiana's borders; the Registrar points to no precedent or persuasive authority to the contrary.   In the face of this well-established legal principle, however, the Registrar tenaciously insists that there are exceptions to the application of the Clause that allow Louisiana to refuse to give full faith and credit to the instant adoption decree.   The Registrar contends first that the "preclusive effects of an out-of-state judgment do not compel another State to alter its public records." She asserts further that adoption decrees are "fundamentally different judgments" from those that must be given "categorical effect" under the Clause, because, unlike typical "money judgements," adoption decrees "create new status, forge on-going family relationships, are typically the product of non-adversarial proceeding[s], and may subvert a State's core domestic policies."   Finally, the Registrar echoes her first contention by advancing that the Clause does not support extending the effects of an adoption decree to control the public records of another state.   We consider each of these contentions in turn.

> ### a. An Out-of-state Adoption Decree has only Preclusive Effect on Future Litigation

---

[34] See, e.g., Hood v. McGehee, 237 U.S. 611, 615 (1915) ("There is no failure to give full credit to the adoption of plaintiffs, in a provision denying them the right to inherit land in another State. Alabama is sole mistress of the devolution of Alabama land by descent.") See also Finstuen, 496 F.3d at 1156 (collecting authorities from Oklahoma, Montana, North Carolina, Pennsylvania, Florida, Illinois, Massachusetts, New Mexico, and California that all hold adoption judgments are owed full faith and credit).   See also the position of the Restatement (First) Conflict of Laws, § 143.  Most pertinently, Louisiana itself acknowledges that out-of-state adoptions are to be afforded full faith and credit.  Alexander v. Gray, 181 So. 639, 645 (La. App. 2d Cir. 1938).

The Registrar's first contention is in reality an argument that the Clause's reach is coextensive with that of the traditional principle of res judicata and therefore does not constrain a forum state's actions beyond such strictures. By way of example, the Registrar offers that an adjudicating state's divorce decree would preclude the forum state from re-litigating the matters decided in that divorce, but would not mandate that the forum state alter its public records to reflect that judgment. From this premise, the Registrar propounds the argument that full faith and credit, being no greater than res judicata, does not require the Registrar to "alter Louisiana's vital records [in a manner] contrary to Louisiana's substantive family law." The Registrar takes this argument further by noting (correctly) that full faith and credit does not require a state to substitute its own statutes for those of another state. Therefore, she continues, because "categorical" recognition of the New York judgment (as opposed to giving it mere res judicata effect) would be tantamount to exporting New York's public policy determination about who may adopt in Louisiana, requiring Louisiana to accept the New York judgment would be no different than requiring Louisiana to substitute a New York statute for one of its own. Consistent with her argument that full faith and credit is nothing greater than res judicata, the Registrar also contends that, because Louisiana was not party to the New York proceedings ("adjudicating her duty to register the New York adoption decree"), Louisiana is not required "to obey New York law"; that Louisiana's processing of vital statistics is "collateral" to "the decree's res judicata effects."

These arguments fail for a number of reasons. First and foremost, full faith and credit is not merely a redundant reiteration of res judicata. At its core, the common law doctrine of res judicata is concerned with respecting the finality

of litigation.[35]  In contrast, even though the Clause does promote this laudatory end,[36] its primary purpose is to serve the modus vivendi of federalism by harmonizing the competing sovereign interests of the several states.[37]  A crucial difference between res judicata and the Clause is that res judicata is the voluntary restraint by a forum state from exercising its power so as to respect the judgment of another state.  Indeed, as to judgments, a forum state may and sometimes does choose to re-litigate issues as it sees fit.[38] In contrast, the Clause is a mandatory, constitutional curb on every state's sovereign power.  With respect to judgments (although not to statutes), a state as a rule has no discretion to disregard a decision of another state on a matter over which that other state is competent to exercise jurisdiction.[39]

---

[35] 47 AM. JUR. 2D JUDGMENTS § 465 ("[T]he doctrine of res judicata is a manifestation of the recognition that endless litigation leads to confusion or chaos. It reflects the refusal of the law to tolerate a multiplicity of, or needless, litigation to the harassment and vexation of a party opponent.") Additionally, res judicata is a doctrine based on the equitable tradition of estoppel.  See 47 AM. JUR. 2D JUDGMENTS § 466.

[36] See Baker, 522 U.S. at 235 (noting that full faith and credit has a "preclusive" effect on litigation in forum states).

[37] Milwaukee County, 296 U.S. at 276-77 ("The very purpose of the full-faith and credit clause was to alter the status of the several states as independent foreign sovereignties, each free to ignore obligations created under the laws or by the judicial proceedings of the others, and to make them integral parts of a single nation throughout which a remedy upon a just obligation might be demanded as of right, irrespective of the state of its origin.").  See also generally Stewart E. Sterk, The Muddy Boundaries Between Res Judicata and Full Faith and Credit, 58 WASH. & LEE L. REV. 47 (2001).

[38] See, e.g., Amerson v. La. Dep't of Transp. & Dev., 570 So.2d 51, 54 (La. App. 5th Cir. 1990) (discussing some judicially created exceptions to the bar of res judicata).

[39] See Magnolia Petroleum Co. v. Hunt, 320 U.S. 430, 438 (1943) ("We are aware of no . . . considerations of local policy or law which could rightly be deemed to impair the force and effect which the full faith and credit clause and the Act of Congress require to be given to . . . a judgment outside the state of its rendition.").

The Registrar's second argument, that the New York adoption decree is a judgment cum statute to which Louisiana does not owe full faith and credit, is a leap too far. Although she is correct that, under the Clause, a statute is not owed the same exacting obeisance as is a judgment, the Registrar cites no authority for the proposition that some kinds of judgments may be treated as statutes for purposes of full faith and credit analyses. She appears to be arguing that, because the New York court's adoption decree embodies both the public policy of New York and New York's adoption statutes (as interpreted by New York courts), the decree may be ignored by Louisiana as an attempt to substitute New York's statute for Louisiana's. But, if credited, this shallow, circular attempt to conflate "judgment" and "statute" would swallow the Clause's curb on the states.[40] If the Registrar's argument were correct, its natural conclusion would be that only those judgments that are rendered on purely common law grounds – unadulterated by any statutory nexus, effect, or derogation – would have to be afforded protection under the Clause. Under this reasoning, to the extent that a judgment incorporates the statutory — and repugnant – public policy of the adjudicating state, a forum state would be free to ignore the adjudicating state's judgment as an improper substitution for the forum state's statute. Such a reading, for the purpose of interstitially importing such an illicit "public policy exception" to the reach of the Clause, is utterly contradicted by precedential full faith and credit jurisprudence.

---

There are limited exceptions to the mandate of the Full Faith and Credit Clause that look behind the judgment to original court proceedings — such as attacking the validity of the judgment under the forum state's law — which are inapplicable here and are not advanced by the Registrar.

[40] See also Finstuen, 496 F.3d at 1153 (discrediting a similar argument).

We acknowledge, as the Registrar observes, that an out-of-state judgment may not force the forum state to "accomplish an official act within its exclusive province."[41] But, this exception refers to judgments that themselves purport to compel action by (not in) another state.[42] Even though the Clause may not serve as a puppeteer to empower an adjudicating state to govern a forum state by judicial decree, that is not occurring here. The New York court has not ordered Louisiana, or any other state, to do or refrain from doing anything. It has merely adjudicated a parent-child relationship between the Adoptive Parents and Infant J. Thus, the question here is not what has a New York decree purported to compel Louisiana to do or not to do; rather, the question here is what respect does Louisiana owe to New York's adoption decree. The obvious answer is that Louisiana owes "exacting" full faith and credit to the New York adoption decree.[43]

---

[41] Baker, 522 U.S. at 235.

[42] Id. (noting that the Court has struck down decrees by one state that purported to transfer title between parties in another state, even though the judgment was preclusive on the parties themselves) (citing Fall v. Eastin, 215 U.S. 1 (1909)). See also Finstuen, 496 F.3d at 1154..

[43] The Registrar's argument that Louisiana is not bound because it was not party to the adoption decree is even more specious. The Supreme Court has made abundantly clear that non-parties may be bound by judgments under the Clause. See, e.g., Johnson v. Muelberger, 340 U.S. 581, 588-89 (1951) (holding that, under the Clause, a daughter may not challenge the validity of her deceased father's Florida divorce on jurisdictional grounds in New York court when Florida law would not allows such an attack). It is true that the Supreme Court held, in Estin v. Estin, 334 U.S. 541 (1948), that a judgment rendered in another state would only be enforced if the other state had personal jurisdiction over the parties to the judgment. As the Tenth Circuit noted when dismissing an argument similar to the Registrar's, however, Estin only applies when one attempts to enforce a judgment against a non-party. See Finstuen, 496 F.3d at 1155. Here, as in Finstuen, the Plaintiffs-Appellees are only seeking to be afforded the rights under Louisiana law to which the judgment entitles them. The New York judgment is not, for example, a damage award or injunction against Louisiana or the Registrar.

### b. Adoptions Decrees are Fundamentally Different from Those Judgments that Must Be Given Categorical Effect under the Full Faith and Credit Clause.

Arguments like those of the Registrar – that adoption decrees are fundamentally different kinds of judgments and are not owed full faith and credit – have either been rejected by those courts that have considered them or simply reflect a fundamental misapprehension of the law and the Constitution. First, as already noted, multiple authorities — including Louisiana — have demonstrated virtually universal agreement that adoption decrees are judgments for purposes of full faith and credit.[44] Furthermore, although the Supreme Court itself has not addressed this precise issue, it has held that other types of domestic-law judgements are to be afforded full faith and credit. For example, the very case on which the Registrar would rely for her argument, New York ex rel. Halvey v. Halvey,[45] recognized that the results of custody proceedings are owed full faith and credit. In Halvey, the Court considered a mother's attempt to have a New York court enforce her Florida-adjudicated child-custody determination. The New York state court had given effect to the determination, but had modified its terms. After the mother challenged this modification under the Clause, the Supreme Court held that (1) New York may alter the custody decree because under Florida law, such decrees are modifiable by a Florida court, but (2) New York could do so only to the same extent as could a Florida court.[46] In reaching this result, the Court reiterated the general principle that

---

[44] See supra note 34.

[45] 330 U.S. 610 (1945). The Registrar's specific citation of authority is to Justice Frankfurter's concurrence.

[46] Id. at 614-15.

out-of-state judgments are due full faith and credit, stating "[t]he general rule is that this command [the Full Faith and Credit Clause] requires the judgment of a sister State to be given full, not partial, credit in the State of the forum."[47]

The Registrar's claim that adoptions fall within a "category" of judgments that are not owed full faith and credit is likewise unavailing. The dichotomy she purports to identify would describe judgments as either prospective or retrospective, with retrospective judgments being owed full faith and credit but prospective judgments not being owed such respect by forum states. According to this contention by the Registrar, the Clause would apply to such retrospective judgments as money judgments, but not to prospective judgments (to which subset she would assign adoption decrees). This assertion echoes the argument dismissed by the Supreme Court in Baker that there is some per se difference under the Clause between money judgments and equitable judgments. The Baker Court held unequivocally that both kinds of judgments are afforded full faith and credit under the Constitution. [48]

The Registrar cites no authority for her proposed prospective-retrospective dichotomy of judgments. Instead, she confuses the broad full faith and credit obligation owed by a forum state to out-of-state judgments with the tightly restricted obligation of the forum state to respect an out-of-state court's ability to determine post-judgment activity in the forum state.[49] This distinction was articulated most recently in Baker, when the Court noted that, although respect

---

[47] Id. (citing Davis v. Davis, 305 U.S. 32 (1938); Williams v. State of North Carolina, 317 U.S. 287 (1942)).

[48] 522 U.S. at 234.

[49] See generally Sterk, supra note 37, for a discussion of this dichotomy.

for judgments is exacting, the Clause does not require one state "to adopt the practices of other States regarding the time, place, manner, and mechanisms for enforcing judgments."[50]

The Registrar would support her distinction by a negative analogy, seeking to show that, unlike money judgments or divorces, which are "final," an adoption judgment "concern[s] the new and ongoing parent-child status created in the originating State." This description of the nature of an adoption is misleading, however: Like divorce decrees between spouses, adoption decrees seek to make legally final the relationship between the adoptive parents and the adopted child.[51] The parent-child status is no more "ongoing" or less final than any other legally determined domestic relationship. That is, the adoption decree creates a legal relationship that remains in effect until and unless it is subsequently changed by legal processes. No one questions that adoptive parents may lose or surrender their parental rights through judicial action just as spouses may divorce and later remarry each other; but this truism does not in any way mitigate the obligation of one state to give full faith and credit to the status judgments of other states.[52]

---

[50] Baker, 522 U.S. at 235.

[51] See, e.g., Matter of Male Infant D., 137 Misc.2d 1016, 1019 523 N.Y.S.2d 369 (New York Family Ct. 1987). ("Since certainty and finality in an adoption proceeding are highly desirable, both from the point of view of the child, who has a substantial interest in a secure home, and from the point of view of the adoptive parents, whose bonding with the child should be unimpeded by fears of possible loss of the child, it is of great importance that an adoption be final when completed and not subject to future attack or controversy.")

[52] Likewise, the Registrar's argument that adoptions are not "judgments" because they are not the product of adversarial proceedings is wholly without merit. See supra note 34 and accompanying text.

The Registrar concludes her argument on this point with the statement that "categorically enforcing sister-state adoption decrees will inevitably undermine core social policies of the second State in a way that simple money judgments or even divorce decrees do not." To the extent that this assertion is meant to cast doubt on whether Louisiana must give full faith and credit to the subject New York adoption decree, the Supreme Court has made pellucid that there is no "roving public policy exception" to the Full Faith and Credit Clause.[53] Again, the specific question here is not whether Louisiana may refuse to recognize the New York adoption (which it clearly may not), but whether that recognition requires it to issue a Certificate under the terms of its own statute. Whether the New York adoption contravenes Louisiana's "public policy" is simply irrelevant and immaterial. Put another way, the new Certificate merely records the action done by the New York court and expresses nothing about what Louisiana would or would not do in matters of its solely domestic concern.

> c. The Clause Does Not Support Extending the Effects of an Adoption Decree to Control the Public Records of Another State.

The Registrar's argument here is that the Clause does not "command[] complete recognition of a sister-state adoption in another State's public records." This is nothing more than a rehash of her earlier argument that adoptions are not a specie of judgment that is owed universal recognition under the Clause. It is equally unavailing.

C. LA. REV. STAT. ANN. § 40:76.

---

[53] Baker, 522 U.S. at 233.

23

Having determined that Louisiana owes full faith and credit to the instant New York adoption decree, we turn to the Registrar's arguments concerning Louisiana's duty vel non to give effect to that decree. She contends that Louisiana's out-of-state adoption birth certificate statute is an "enforcement mechanism," and therefore, even if Louisiana owes full faith and credit to the New York adoption decree, is not required to enforce the decree by issuing a Certificate to Infant J. Alternatively, the Registrar urges us to certify the question of § 40:76's application to the Supreme Court of Louisiana. We address certification before addressing the Registrar's proffered interpretation of the State's statute.

> 1. Certification of the Question of Interpretation of § 40:76 to the Louisiana Supreme Court.

Rule 12 of the Louisiana Supreme Court authorizes us to certify questions of state law to that court. The Registrar urges us to certify the "proper construction" of § 40:76 to the Louisiana Supreme Court. She offers as support for this request that (1) the state law is unsettled on this question; (2) a definitive interpretation would "impact the constitutional question"; and (3) the "the state law implicates sensitive family-law and interstate comity issues." Because we hold that the statute's meaning is clear and unambiguous, we decline the Registrar's request for certification under Rule 12.

> 2. Section 40:76 is an Enforcement Mechanism for Purposes Full Faith and Credit.

The Registrar does not point to any direct authority for her bald assertion that a statute such as § 40:76 is a "time [and] manner . . . mechanism[] for

24

enforcing judgments."[54]   The Plaintiffs-Appellees counter not only that the statute is not an enforcement mechanism, but that it would be immaterial if that were not clear because, even if the statute were an "enforcement mechanism," under Baker, the Registrar has failed to enforce the statute in an "evenhanded" manner.

We are at least doubtful that the adoption statute is an "enforcement mechanism." But even if we assume arguendo that it is such a mechanism, the Registrar cannot prevail. If the plain language of Louisiana's own statute requires that a new, corrected birth certificate be issued to Louisiana-born adopted minors and their adoptive parents[55] (as it clearly does), that requirement must be applied in an "evenhanded" manner.[56]   The pertinent question thus turns on the language of Louisiana's statute.

### 3. Interpreting LA. REV. STAT. ANN. § 40:76.

Neither the parties's citations nor our research reveals that any other court, state or federal, has interpreted § 40:76. Proceeding on a blank slate, therefore, we must look to analogous decisions of Louisiana's courts for guidance in construing its statutes: When we interpret state law, we are "bound to apply the law as the state's highest court would."[57]   With regard to judicial interpretation of state statutes, the Louisiana Supreme Court has held:

---

[54] Baker, 522 U.S. at 235.

[55] See Finstuen, 496 F.3d at 1154 (noting that, even though a California judgment is owed full faith and credit by Oklahoma, "[w]hatever rights may be afforded [by virtue of the judgment] flow from an application of Oklahoma law, not California). See also McElmoyle ex rel. Bailey v. Cohen, 13 Peters 312, 325 (1839) (holding judgment may only be enforced as laws of enforcing forum permit).

[56] Baker, 522 U.S. at 224.

[57] FDIC v. Abraham, 137 F.3d 264, 267-68 (5th Cir.1998) (citations omitted).

> As a general rule, '[t]he plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters' [in which case] the intention of the drafters, rather than the strict language controls.'[58]

Furthermore:

> While it is true that the Civil Code directs that laws on the same subject matter should be construed with reference to one another, it is also true that it is only when one statute is unclear that another on the same subject should be called in aid to explain it. Otherwise, where there is no ambiguity, the words of a statute are to be read in their most usual significance, that is, according to their general and popular use.[59]

With these general principles in mind, we examine the text of the subject statute itself. LA. REV. STAT. ANN. § 40:76 reads:

> A. When a person born in Louisiana is adopted in a court of proper jurisdiction in any other state or territory of the United States, the state registrar may create a new record of birth in the archives upon presentation of a properly certified copy of the final decree of adoption or, if the case has been closed and the adoption decree has been sealed, upon the receipt of a certified statement from the record custodian attesting to the adoption decree.
> B. The decree is considered properly certified when attested by the clerk of court in which it was rendered with the seal of the court annexed, if there is a court seal, together with a certificate of the presiding judge, chancellor, or magistrate to the effect that the attestation is in due form. The certified statement is considered proper when sworn to and having the seal of the foreign state or territory's record custodian.

---

[58] State v. Ste. Marie, 723 So. 2d 407, 409 (La. 1998) (quoting United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 243 (1989) (internal citation omitted)).

[59] Crescionne v. Louisiana State Police Retirement Bd., 455 So.2d 1362, 1363 (La. 1984) (citing LA. CIVIL CODE art. 17 which was amended in 1987 to be reassigned as LA. CIVIL CODE ANN. art. 13)).

> C. Upon receipt of the certified copy of the decree, the state registrar shall make a new record in its archives, showing:
> (1) The date and place of birth of the person adopted.
> (2) The new name of the person adopted, if the name has been changed by the decree of adoption; and
> (3) The names of the adoptive parents and any other data about them that is available and adds to the completeness of the certificate of the adopted child.

The district court interpreted the plain language of § 40:76(C) to mandate that the Registrar issue a Certificate for Infant J that identifies both Adoptive Parents. The Registrar takes issue with the district court's interpretation for two reasons. First, she asserts that § 40:76(A) vests her with the discretion to decide whether to issue a new birth certificate ("the state registrar may create a new record of birth in the archives . . . ."), and that § 40:76(C)'s mandatory language ("Upon receipt of the certified copy of the decree, the state registrar shall make a new record . . .") applies only to the contents of the new certificate. This reading, she argues, renders her decision whether to issue a new Certificate wholly discretionary and not subject to challenge. The Registrar further contends that the phrase "adoptive parents" should be construed in pari materia with those provisions of the Louisiana Civil Code that prohibit adoptions within the state by unmarried couples. The Registrar does not offer, and our research does not reveal, any place where the phrase "adoptive parents" is expressly defined in the Louisiana Civil Code, the State's statutes, or the case law.

The crux of the Registrar's first argument is that each word in the statute must be given effect;[60] accordingly, giving effect to this permissive language in

---

[60] See Burmaster v. Plaquemines Parish Gov't, 982 So. 2d 795, 804 (La. 2008) ("[E]very word in a statute must be given meaning, if possible, and no word, clause, phrase or sentence of a statute shall be deemed meaningless or surplusage if a construction can be legitimately

§ 40:76(A) renders the entire statue discretionary as to whether a Certificate is issued. Thus, according to the Registrar, (1) § 40:76(A) affords her broad discretion in deciding whether to issue a Certificate on the basis of an out-of-state adoption; (2) § 40:76(B) establishes the authentication requirements for an out-of-state decree; and (3) § 40:76(C) mandates only the contents of the Certificate, when and if the Registrar should choose to issue one.

Dealing as we are with a statutory grant of ministerial authority, we look to Louisiana precedent on this matter as a guide for our interpretation. Under the State's constitution, a statutory grant of ministerial authority must comport with that document's separation-of-powers clause, which prohibits "[unconstitutional] delegation" of authority by the legislative branch of state government to another branch.[61] Delegation of authority by the legislature to the executive branch must not be so broad as to impinge the mandatory separation of powers.[62] In considering this issue, Louisiana courts have traditionally distinguished between two types governmental authority: (1) ministerial or administrative authority, which may be delegated; and (2) purely legislative authority, which may not be delegated.[63] As for the former, Louisiana's highest court has observed that:

> the complexity of our social and industrial activities . . . [have lead the court's] decisions to hold as non-legislative the authority conferred upon boards and commissions . . . . [T]he Legislature may

---

found that will give force to and preserve every word of the statute.").

[61] State v. All Pro Paint & Body Shop, Inc., 639 So. 2d 707, 711 (citing LA. STAT. ANN. art. II § 2).

[62] Id.

[63] Id.

make the operation or application of a statute contingent upon the existence of certain conditions, and may delegate . . .the power to determine the existence of such facts and carry out the terms of the statute. So long as the regulation or action . . . does not determine what the law shall be, or involve the exercise of primary and independent discretion, but only determines within prescribed limits some fact upon which the law by its own terms operates, such regulation is administrative and not legislative in its nature.[64]

As for the delegation of legislative authority, that court has stated:

When the delegated authority is unfettered . . . , its exercise becomes legislative, not administrative, in nature, and contravenes the mandate of Article 2, Section 2 of the Louisiana Constitution.[65]

The Supreme Court of Louisiana has fashioned a three-pronged test for determining whether a statute unconstitutionally delegates legislative authority:

Delegation of authority to an administrative agency is constitutionally valid if the enabling statute (1) contains a clear expression of legislative policy, (2) prescribes sufficient standards to guide the agency in the execution of that policy, and (3) is accompanied by adequate procedural safeguards to protect against abuse of discretion by the agency.[66]

Whenever possible, a court should avoid interpreting a statute in a way that renders it unconstitutional.[67] If the Registrar's interpretation of § 40:76 would

---

[64] Schwegmann Brothers Giant Super Markets v. McCrory, 112 So. 2d 606, 613 (La. 1959) (footnotes omitted).

[65] State v. Taylor, 479 So. 2d 339, 343 (La. 1985) (emphasis added).

[66] All Pro Paint & Body, 639 So. 2d at 711.

[67] Crown Beverage Co. v. Dixie Brewing Co., 695 So. 2d 1090, 1093 (La. App. 4th Cir.1997) ("If a statute can be interpreted in either of two ways, one of which raises a serious question of the statute's constitutionality and one of which does not, then the court should

render it unconstitutional under the All Pro Paint & Body test, then it should be rejected in favor of a more constrained construction, assuming one is available.

The Registrar's interpretation fails at least prongs two and three of the All Pro Paint & Body test. First, even if the Registrar were correct that the permissive "may" in § 40:76(A) allows her unfettered discretion to issue or not to issue a birth certificate, there is still no accompanying legislative guide to implementing the legislative policy (assuming there is one) in furtherance of this grant of discretion. Under the Registrar's own argument it would be within her sole decision whether to issue a birth certificate: No standards for making that decision, outside of mere whimsy, are to be found in the statute.[68] By the same token, this absence of any guiding policy is linked to the absence of any procedural safeguards. Because, under the Registrar's interpretation, she would have the unlimited discretion to issue (or to decline to issue) birth certificates for out-of-state adoptions, she in her discretion may simply choose not to issue a birth certificate for a Louisiana-born child to a married couple who could legally adopt in Louisiana. Her proffered reading of the statute would thus afford such a couple no safeguard in their access to a new, corrected birth certificate. The Legislature's intent in enacting § 40:76, at a minimum, is surely not to allow the

---

favor the interpretation which avoids the constitutional question.") (citing Norman Singer, SUTHERLAND'S STATUTORY CONSTRUCTION § 45.11 (5th ed.1992 rev.)).

[68] The Registrar has in fact described how the application of such unguided discretion might look . In her deposition, the Registrar noted that it has been her policy, when previously faced with a request for a birth certificate for an out-of-state adoption by persons unable to legally adopt in Louisiana, to issue the certificate with only one parent's name. Yet, she cites no statutory authority for this practice other than Louisiana's in-state adoption provisions. Certainly nothing in § 40:76 authorizes this practice or indicates that it furthers the legislature's policy with regard to out-of-state adoptions.

Registrar – for any reason or for no reason at all – to deny birth certificates to out-of-state adopters who could have adopted the Louisiana-born child under Louisiana law. The statute's plain language suggests no such legislative intent.

In the framework of All Pro Paint & Body, we do not find the Registrar's excessively broad interpretation of § 40:76 to be persuasive or reasonable. Under the Registrar's interpretation, she would enjoy absolute discretion in issuing or denying birth certificates for out-of-state adoptions, without any legislative guidance or limitation whatsoever. Furthermore, there is some authority which holds that when a statute directs a public official to perform some act, the otherwise permissive auxiliary "may" is in fact read as mandatory, if to deem it discretionary would thwart the act's very purpose.[69]

We need not go so far as to hold that the language in § 40:76(A) is mandatory, however, because a facially reasonable reading of that statute would restrict the applicability of the "may" in that section to that section only, limiting the Registrar's discretion to issue a birth certificate for an out-of-state adoption to the determination whether the out-of-state decree is "properly certified," or, in the case of sealed records (as is the case here), on receipt of a certified statement. This more circumspect reading affords the Registrar the discretion

---

[69] See Sanders v. Department of Health & Human Resources, 388 So.2d 768, 770 (La. 1980) ("If a requirement is so essential to the statutory plan that the legislative intent would be frustrated by non-compliance, then it is mandatory."). See also Norman Singer, SUTHERLAND'S STATUTORY CONSTRUCTION § 57.14 (5th ed.1992 rev.) ("Courts have also stated that where the intent of the legislature was to impose a duty on a public officer rather than a discretionary power, even the word "may" has been held to be mandatory."). But see Bannister v. Department of Streets, 666 So.2d 641, 646 (La. 1996) ("[P]rovisions designed to secure order, system, and dispatch in proceedings by guiding the discharge of a governmental official's duties are usually construed as directory even if worded in the imperative, especially when the alternative is harshness or absurdity.").

of the permissive language in the exercise of her ministerial function, i.e., in determining the validity and sufficiency of the certification furnished, without granting her the plenary and arbitrary power to decide which Louisiana-born children will receive Certificates and which will not.

We hold that the correct interpretation of § 40:76(A) is that its use of "may" affords the Registrar the limited discretion of determining whether the certification furnished by the applicants is satisfactory. The discretion afforded her is that she need issue a certificate only when she is satisfied that the certification is satisfactory, a decision that is guided in turn by § 40:76(B)'s list of the required contents of such certification. Finally, if the decree's certification is proper, then § 40:76(C) mandates that the Registrar issue a new, corrected birth certificate. This interpretation avoids the Registrar's manifestly strained and unconstitutional attempt to go beyond the plain language of the statute.

In her second statutory-interpretation argument, the Registrar notes that construing § 40:76(C) as requiring her to issue a birth certificate that lists both adoptive parents whenever, under § 40:76(A), she determines that the proffered certification satisfies § 40:76(B), is a reading improperly isolated from the rest of Louisiana's substantive law, specifically articles 1198, 1221, and 1243 of the Louisiana Children's Code, which authorize joint adoptions by married couples only, and article 3520(B) of the Louisiana Civil Code, which limits state recognition to married heterosexual persons only.[70] Thus, according to the Registrar's interpretation, because (1) the Adoptive Parents are an unmarried,

---

[70] LA. CIV. CODE ANN. art. 3520(B) ("A purported marriage between persons of the same sex violates a strong public policy of the state of Louisiana and such a marriage contracted in another state shall not be recognized in this state for any purpose, including the assertion of any right or claim as a result of the purported marriage.").

32

same-sex couple, and (2) adoption provisions other than § 40:76 would deny them the right to adopt in Louisiana, § 40:76 should likewise require such a prohibition for out-of-state adoptions by referential implication.

The Registrar relies on Article 13 of the Louisiana Civil Code, which directs that statutes are to be construed with reference to one another. Assuming arguendo (and not without serious doubts as to its validity) that the statutory provisions which the Registrar cites are relevant or salient to the meaning of "adoptive parents," the Registrar's reasoning nevertheless fails to account for the strictures established by the Supreme Court of Louisiana when interpreting the Civil Code's Article 13. The court held in Crescionne that other statutes are to be consulted "only when one statute is unclear."[71] In essence, the Registrar's entire argument rests on construing the term "adoptive parents" not to include "same-sex couples" for purposes § 40:76 because an in-state adoption can be effected only by married, heterosexual couples. Nowhere does she argue, however, that the term "adoptive parents" is ambiguous or unclear.

The court's decision in Crescionne is instructive here. In that case, the parties disagreed about the meaning of the phrase "surviving spouse" in a particular state statute. The court reasoned that:

> The ordinary meaning of the word "spouse" is one's husband or wife, and marriage is dissolved only by death, divorce, judicial decree of nullity, or the contracting of another marriage on account of absence when authorized by law. Had the legislature intended that a use of the term other than the one usually and generally understood, it could have given the words "surviving spouse" a legal definition . . . .
> . . . .

---

[71] 455 So.2d at 1363 (emphasis added). The court in Crescionne considered Article 17, which was later re-codified as present Article 13. The reassignment "did not change the law." See Revision Comments.

Since there is no special statutory definition of the term "surviving spouse," we hold that it must be given its ordinary, commonly understood meaning . . . .[72]

Like "surviving spouse," the term "adoptive parents" is nowhere defined in the statute, or elsewhere in the codes or the case law of Louisiana. When we parse the term for its plain meaning, we find that a common dictionary definition of "parent" is "father or mother,"[73] and that the meaning of "adoptive" is "of or involving adoption . . . acquired or related by adoption."[74] Thus, when effect is given to the ordinary meaning of the words of the statute, the plain meaning of "adoptive parents" is a "father or mother who adopts a child." It is obvious to us that this construction is the ordinary, commonly understood one. As the meaning of "adoptive parent" is clear and unambiguous, our inquiry is over; we need not consult other statutes for interpretive guidance.[75] Neither shall we overstep our mandate by importing the strained and attenuated reading that the Registrar urges by reference to other statutory provisions of at best uncertain applicability. The New York adoption decree constitutes both Adar and Smith as a "father" "related by adoption" to Infant J. Accordingly, under the

---

[72] Crescionne, 455 So.2d at 1364.

[73] WEBSTER'S ENCYCLOPEDIA UNABRIDGED DICTIONARY OF THE ENGLISH LANGUAGE (1989 ed.).

[74] Id.

[75] Likewise, the Registrar's argument that LA. REV. STAT. ANN. § 40:34(D) prohibits altering vital birth records in violation of state law is without force; the out-of-state adoption provision, LA. REV. STAT. ANN. § 40:76, expressly requires the "adoptive parents" to be named on the new, corrected birth certificate, and it controls. See, e.g., Morton v. Mancari, 417 U.S. 535, 550-51 (1974) ("Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment.").

plain meaning of the term "adoptive parents," written as it is in § 40:76, and by virtue of the New York adoption decree, we hold that Adar and Smith are the "adoptive parents" of Infant J for purposes of §§ 40:76 and 40:77.

## IV. Conclusion

We hold that under the plain meaning of the statutes, Adar and Smith are the "adoptive parents" of the minor J. C. A.-S. for purposes of LA. REV. STAT. ANN. §§ 40:76 and 40:77, and that under the Full Faith and Credit Clause of the Constitution of the United States, Louisiana owes full faith and credit to the New York adoption decree that declares J .C. A.-S. to be the adopted child of Adar and Smith. We hold further that said § 40:76 does not vest the Registrar with discretion to refuse to make a new, correct birth certificate for a Louisiana-born child when, as here, his out-of-state adoption decree is evidenced by documentation that indisputably satisfies the requirements of § 40:76(A) and (B). We also hold that § 40:76 mandates that the Registrar make a new record for J. C. A.-S. and issue a new, correct birth certificate for him containing all statutorily directed information.

We therefore LIFT our stay of the district court's order; AFFIRM the district court's grant of a mandatory injunction; and ORDER that the Registrar comply with the district court's injunction forthwith.[76]

---

[76] Because we affirm the district court's grant of summary judgment on these grounds, we decline to address Plaintiffs-Appellees' equal protection arguments.