# WHETHER THE CRIMINAL PROVISIONS OF THE VIOLENCE AGAINST WOMEN ACT APPLY TO OTHERWISE COVERED CONDUCT WHEN THE OFFENDER AND VICTIM ARE THE SAME SEX

*The criminal provisions of the Violence Against Women Act apply to otherwise covered conduct when the offender and victim are the same sex.*

April 27, 2010

## MEMORANDUM OPINION FOR THE
## ACTING DEPUTY ATTORNEY GENERAL

You have asked us whether the criminal provisions of the Violence Against Women Act ("VAWA") apply to otherwise covered conduct when the offender and victim are the same sex. VAWA includes three criminal provisions: 18 U.S.C. § 2261 (2006), addressing interstate domestic violence; 18 U.S.C. § 2261A (2006), addressing interstate stalking; and 18 U.S.C. § 2262 (2006), addressing the interstate violation of a protection order. Consistent with the views we received, we conclude that each of these provisions applies when the offender and the victim are the same sex.[1]

## I.

The first of VAWA's three criminal provisions, section 2261, addresses certain specified types of interstate domestic violence. Subsection (a)(1) makes it a federal crime to travel in interstate or foreign commerce, to enter or leave Indian country, or to travel within the special maritime or territorial jurisdiction of the United States "with the intent to kill, injure, harass, or intimidate a *spouse, intimate partner, or dating partner*" if, in the course of or as a result of such travel, the offender "commits or attempts to commit a crime of violence against that *spouse, intimate partner, or dating partner*." 18 U.S.C. § 2261(a)(1) (emphases added). Subsection (a)(2) makes it a federal crime to "cause[] *a spouse, intimate partner, or dating partner* to travel in interstate or foreign commerce or to enter or leave Indian country by force, coercion, duress, or fraud" and, during, as a result of, or to facilitate such conduct or travel, to "commit[] or attempt[] to commit a crime of violence against that *spouse, intimate partner, or dating partner*." *Id.* § 2261(a)(2) (emphases added). Section 2261 was part of VAWA as originally enacted in 1994, but at that time it covered only victims who were a "spouse or intimate partner" of the

---

[1] We received views from the Criminal and Civil Rights Divisions, the Office on Violence Against Women, and the Executive Office for United States Attorneys. *See* E-mail for Jeannie S. Rhee, Deputy Assistant Attorney General, Office of Legal Counsel, from Mythili Raman, Principal Deputy Assistant Attorney General, Criminal Division (Feb. 23, 2010) (attaching Memorandum for Lanny A. Breuer, Assistant Attorney General, Criminal Division, from P. Kevin Carwile, Chief, Gang Unit, and Michael S. Warbel, Trial Attorney, Criminal Division, *Re: Criminal Prosecution of Same-Sex Partners Under the Violence Against Women Act* (Feb. 19, 2010)); E-mail for David J. Barron, Acting Assistant Attorney General, Office of Legal Counsel, from Samuel Bagenstos, Principal Deputy Assistant Attorney General, Civil Rights Division (Apr. 8, 2010); Memorandum for Jeannie S. Rhee, Deputy Assistant Attorney General, Office of Legal Counsel, from Jennifer E. Kaplan, Attorney Advisor, Office on Violence Against Women, *Re: Application of the Violence Against Women Act to Same-Sex Dating Violence* (Mar. 24, 2010); E-mail for Jeannie S. Rhee, Deputy Assistant Attorney General, Office of Legal Counsel, from Margaret S. Groban, Assistant United States Attorney, EOUSA Office of Legal Programs and Policy (Feb. 10, 2010).

offender. 18 U.S.C. § 2261 (2000). The 2006 VAWA amendments added the term "dating partner" to both subsections described above. *See* Pub. L. No. 109-162, tit. I, § 116, 119 Stat. 2988 (2006).

Second, section 2261A addresses interstate stalking. Subsection (1) makes it a federal crime to travel in interstate or foreign commerce, to enter or leave Indian country, or to travel within the special maritime or territorial jurisdiction of the United States "with the intent to kill, injure, harass, or place under surveillance with intent to kill, injure, harass, or intimidate *another person*" if, in the course of or as a result of such travel, the offender "places that person in reasonable fear of the death of, or serious bodily injury to, or causes substantial emotional distress to that person, a member of the immediate family (as defined in section 115)[2] of that person, *or the spouse or intimate partner of that person*." 18 U.S.C. § 2261A(1) (emphases added). Subsection (2) makes it a federal crime to, with certain specified intent, "use[] the mail, any interactive computer service, or any facility of interstate or foreign commerce to engage in a course of conduct that causes substantial emotional distress to" "*a person* in another State or tribal jurisdiction or within the special maritime and territorial jurisdiction of the United States," or to place "that person in reasonable fear of the death of, or serious bodily injury to," "that person," "a member of the immediate family (as defined in section 115) of that person," or "*a spouse or intimate partner of that person*." *Id.* § 2261A(2) (emphases added). When first enacted in the 1996 amendments to VAWA, section 2261A covered only the target of the stalking and that person's immediate family members. *See* Pub. L. No. 104-201, div. A, tit. X, § 1069, 110 Stat. 2655 (1996). The 2000 VAWA amendments added subsection (2) and the phrase "spouse or intimate partner" after "immediate family" in subsection (1). *See* Pub. L. No. 106-386, div. B, tit. I, § 1107(b)(1), 114 Stat. 1498 (2000).

Finally, section 2262 addresses the interstate violation of a protection order.[3] Subsection (a)(1) makes it a federal crime to travel in interstate or foreign commerce, to enter or leave Indian country, or to travel within the special maritime and territorial jurisdiction of the United States "with the intent to engage in conduct that violates the portion of a protection order that prohibits or provides protection against violence, threats, or harassment against, contact or communication with, or physical proximity to, *another person*, or that would violate such a portion of a protection order in the jurisdiction in which the order was issued," and to subsequently engage in such conduct. 18 U.S.C. § 2262(a)(1) (emphasis added). Subsection (a)(2) makes it a federal crime to "cause[] *another person* to travel in interstate or foreign commerce or to enter or leave Indian country by force, coercion, duress, or fraud" if, in the course of, as a result of, or to facilitate such conduct or travel, the offender engages in conduct described in subsection (a)(1). *Id.* § 2262(a)(2) (emphasis added). Section 2262 was part of VAWA as originally enacted in 1994, but subsection (a)(2) applied at that time only to "a spouse or intimate partner" of the offender. 18 U.S.C. § 2262 (1994). The 2000 amendments to VAWA substituted "another person" for "a spouse or intimate partner." Pub. L. No. 106-386, div. B, tit. I, § 1107(c), 114 Stat. 1498-99. These amendments also changed the wording of subsection

---

[2] Section 115 defines "immediate family member" as an individual's "spouse, parent, brother or sister, child or person to whom he stands in loco parentis" or "any other person living in his household and related to him by blood or marriage." 18 U.S.C. § 115 (2006).

[3] For purposes of VAWA, "protection order" is defined in 18 U.S.C. § 2266(5) (2006).

(a)(1) to refer to "another person" rather than to "the person or persons for whom the protection order was issued." *Id.*

## II.

We begin with an analysis of similar language that is used in sections 2261A and 2262, which cover interstate stalking and the interstate violation of a protection order, to define the class of victims to which they apply. Each provision applies to covered acts committed by an offender against "another person," although 2261A also applies in some circumstances to acts that affect a "spouse or intimate partner of that person," a point that we discuss further below.

With respect to the meaning of "another person," the analysis is straightforward. The plain meaning of the term encompasses individuals of both sexes, regardless of their relationship to the offender, and nothing in the text or the structure or purpose of VAWA indicates that a departure from plain meaning would be appropriate. It is true that the statute is entitled the Violence Against Women Act, but other provisions of the Act make clear it applies to conduct perpetrated against male, as well as female, victims, *see*, *e.g.*, 42 U.S.C. § 13925(b)(8) (2006) (providing, with respect to VAWA's grant conditions, that "[n]othing in this subchapter shall be construed to prohibit male victims of domestic violence, dating violence, sexual assault, and stalking from receiving benefits and services under this subchapter"), and courts have so held, *see*, *e.g.*, *United States v. Bell*, 303 F.3d 1187 (9th Cir. 2002) (male victims of interstate stalking); *see also United States v. Page*, 167 F.3d 325, 326 (6th Cir. 1999) (Moore, J., concurring) ("While Congress was particularly concerned with those crimes that 'disproportionately burden women,' S. Rep. No. 103-138, at 37, [VAWA's] criminal provisions are gender-neutral, and enforcement has been gender-neutral as well."). Courts have also held that sections 2261A and 2262 apply when the offender and victim are the same sex, *see*, *e.g.*, *Bell*, 303 F.3d at 1189 (man convicted of stalking several men believed to have been government agents); *United States v. Wills*, 346 F.3d 476 (4th Cir. 2003) (man convicted of stalking man who was a government witness against him); *United States v. Nedd*, 262 F.3d 85 (1st Cir. 2001) (man convicted of violating protection order covering an unrequited love interest and her father), and regardless of whether the offender and victim are involved in a romantic relationship, *see*, *e.g.*, *United States v. Fullmer*, 584 F.3d 132 (3d Cir. 2009) (animal rights activists convicted of stalking individuals associated with a company that conducted animal testing). We thus conclude that, in referring to "another person," sections 2261A and 2262 apply to otherwise covered conduct when the offender and victim are the same sex, and irrespective of the relationship between the offender and victim.

Section 2261A also applies when an offender places the target of the stalking in "reasonable fear of the death of, or serious bodily injury to," the target's "spouse or intimate partner" or "causes substantial emotional distress" to the target's "spouse or intimate partner." For purposes of VAWA, the term "spouse" cannot be read to cover an individual who is the same sex as the target of the stalking, even if they are married under state law, because the Defense of Marriage Act ("DOMA") provides that "[i]n determining the meaning of any Act of Congress, or of any ruling, regulation, or interpretation of the various administrative bureaus and

agencies of the United States, . . . the word 'spouse' refers only to a person of the opposite sex who is a husband or a wife."  1 U.S.C. § 7 (2006).[4]

DOMA does not, however, address the additional term "intimate partner," which, for purposes of section 2261A, is defined in 18 U.S.C. § 2266(7) (2006).  That section provides that the composite phrase "spouse or intimate partner" means "a spouse or former spouse of the target of the stalking, a person who shares a child in common with the target of the stalking, and a person who cohabits or has cohabited as a spouse with the target of the stalking"; "a person who is or has been in a social relationship of a romantic or intimate nature with the target of the stalking, as determined by the length of the relationship, the type of relationship, and the frequency of interaction between the persons involved in the relationship"; or "any other person similarly situated to a spouse who is protected by the domestic or family violence laws of the State or tribal jurisdiction in which the injury occurred or where the victim resides."[5]  Two parts of this composite definition—namely, "a person who shares a child in common with the target of the stalking" and "a person who is or has been in a social relationship of a romantic or intimate nature with the target of the stalking"—refer to a "person" without any kind of spousal relationship to the target of the stalking and thus provide content to what it means to be an "intimate partner."  The unqualified use of the term "person" is significant, as its plain meaning, for the reasons set forth above, is best read to be encompassing.  And there is nothing else in subsection 2266(7) that provides a basis for reading the term "person" more narrowly in this context to exclude an individual who is the same sex as the target of the stalking.  Two individuals who are the same sex may, for example, "shar[e] a child in common," *see*, *e.g.*, *Adar v. Smith*, 597 F.3d 697 (5th Cir. 2010); *Finstuen v. Crutcher*, 496 F.3d 1139 (10th Cir. 2007), or be involved in a "social relationship of a romantic or intimate nature" for purposes of that subsection, *see*, *e.g.*, *Lawrence v. Texas*, 539 U.S. 558 (2003); *Baker v. State*, 744 A.2d 864 (Vt. 1999).  And although the definition of "intimate partner" refers to the "type of relationship" as one criterion for determining whether a relationship is a "social relationship of a romantic or intimate nature," there is no indication Congress intended by that vague phrase to require such relationships to be heterosexual.  Indeed, the phrase is most naturally read to refer to indicia that the relationship is or was "romantic or intimate," as the statute prescribes.[6]  Thus, based on the

---

[4]  Section 2261A also applies when an offender places the target of the stalking in reasonable fear of the death of, or serious bodily injury to, or causes substantial emotional distress to a member of the target's "immediate family," which, as defined in 18 U.S.C. § 115, includes a spouse.  *See supra* note 2.  This section thus applies to the target's spouse through two separate references—"immediate family" and "spouse or intimate partner"—a redundancy that is explained, at least in part, by the fact that section 115's definition is not specific to VAWA and that the term "spouse or intimate partner," added to section 2261A as an amendment after its original enactment, occurs throughout VAWA and is defined as a composite phrase.  *See* 18 U.S.C. § 2266(7) (2006).  DOMA's limitation on the term "spouse" applies to section 115 as well as to the phrase "spouse or intimate partner."

[5]  The 2006 VAWA amendments added the reference to individuals in social relationships of a romantic or intimate nature.  Pub. L. No. 109-162, tit. I, § 106(d), 119 Stat. 2982.

[6]  Although "a word may be known by the company it keeps," *Graham County Soil and Water Conservation Dist. v. United States ex rel. Wilson*, ___ U.S. ___, No. 08-304, slip op. at 6 (Mar. 30, 2010) (internal quotation marks omitted), the fact that VAWA joins the term "spouse" with the term "intimate partner" in one combined definition is not a ground for concluding that DOMA's restriction on the former term should be applied to the latter term so as to preclude an "intimate partner" from being the same sex as the offender.  The *noscitur a sociis* canon applies when a potentially broad term appears as part of "some sort of gathering with a common feature to extrapolate" in order to give consistent meaning to the statutory terms that are so gathered.  *S.D. Warren Co. v. Me.*

statutory definition, a person who is the same sex as the target of the stalking may be an "intimate partner" of the target for purposes of section 2261A.

The last of VAWA's criminal provisions, section 2261, is limited in reach to those victims who are the "spouse, intimate partner, or dating partner" of the offender. Despite this difference from sections 2261A and 2262, we conclude that section 2261, too, applies when the victim and the offender are the same sex. The analysis that leads us to this conclusion is essentially the same as that set forth above.

The term "spouse" may not be read to include an individual who is the same sex as the offender because of DOMA, but 18 U.S.C. § 2266(7) defines the phrase "spouse or intimate partner"[7] for purposes of section 2261 in materially identical terms to the definition that governs section 2261A. An "intimate partner" of the offender thus includes "a person who shares a child in common with the abuser" and "a person who is or has been in a social relationship of a romantic or intimate nature with the abuser, as determined by the length of the relationship, the type of relationship, and the frequency of interaction between the persons involved in the relationship." Because, as we have noted, persons who are the same sex may share a child in common or be in a social relationship of a romantic or intimate nature, the term "intimate partner" in section 2261 includes a victim who is the same sex as the abuser.

With respect to section 2261, therefore, that leaves only the term "dating partner" to be examined. The term is defined in 18 U.S.C. § 2266(10) similarly to one portion of subsection 2266(7)'s definition of "spouse or intimate partner." Subsection 2266(10) provides that a "dating partner" is "a person who is or has been in a social relationship of a romantic or intimate nature with the abuser," and it specifies that "[t]he existence of such a relationship is based on a consideration of" "the length of the relationship," "the type of relationship," and "the frequency of interaction between the persons involved in the relationship."[8] As we have explained,

---

*Bd. of Envtl. Prot.*, 547 U.S. 370, 379-80 (2006); *see also Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 226 (2008); *Gutierrez v. Ada*, 528 U.S. 250, 254-58 (2000) (applying the canon to limit the phrase "any election" to gubernatorial elections when the phrase was surrounded by six specific references to gubernatorial elections). Simply put, the terms "spouse" and "intimate partner," despite their appearance together in the definitional section of VAWA, do not constitute the requisite sort of "gathering with a common feature" to which the *noscitur* canon could apply. *See, e.g.*, *Graham County*, slip op. at 7 (declining to apply the canon to the adjectives "congressional, administrative, or Government Accounting Office" in order to limit the middle term to federal, rather than all governmental, administrative reports).

[7] Section 2261, as originally enacted, included the exact phrase "spouse or intimate partner," but the 2006 VAWA amendments replaced that phrase with "spouse, intimate partner, or dating partner." Despite the fact that the terms "spouse" and "intimate partner" are now separated by a comma rather than by the word "or" in section 2261, it is clear that the definition in subsection 2266(7) ("spouse or intimate partner") continues to govern the meaning of the two terms.

[8] The 2006 VAWA amendments introduced the term "dating partner" and this attendant definition, Pub. L. No. 109-162, tit. I, § 116(b), 119 Stat. 2989, although the 2000 amendments had previously used the term "dating violence" in several of VAWA's non-criminal provisions and had defined that term in nearly identical language. *See, e.g.*, Pub. L. No. 106-386, tit. I, § 1108, 114 Stat. 1500 ("[T]he term 'dating violence' means violence committed by a person—(A) who is or has been in a social relationship of a romantic or intimate nature with the victim; and (B) where the existence of such a relationship shall be determined based on a consideration of the

materially identical language supports the conclusion that an "intimate partner" may be the same sex as the abuser, and we see no reason for reaching a different conclusion as to this language when it defines the term "dating partner." In both cases, the relevant definitions contained in section 2266 state that the terms "intimate partner" and "dating partner" in section 2261 refer to a "person" with a particular sort of relationship to the abuser. They do not further suggest any limitation based on the sex of either the abuser or the victim or any requirement that the abuser and the victim not be the same sex.

The limited legislative history that bears on the pertinent VAWA provisions is consistent with our reading of the terms "intimate partner" and "dating partner." The 2006 VAWA amendments added the definition of "dating partner" and amended the definition of "spouse or intimate partner" for purposes of VAWA's criminal provisions. Those amendments also sought to strengthen the health care system's response to domestic violence, dating violence, sexual assault, and stalking. A finding pertaining to these latter changes discusses the "health-related costs of intimate partner violence" and notes that "[t]hirty-seven percent of all *women* who sought care in hospital emergency rooms for violence-related injuries were injured by a current or former spouse, boyfriend, or *girlfriend*." Pub. L. No. 109-162, § 501(1)-(2) (emphases added). This finding's reference to "intimate partner" violence between women and their girlfriends comports with our conclusion that two individuals who are the same sex may be considered "intimate partner[s]" for purposes of VAWA.

Similarly, H.R. 1248, 106th Cong. (1999), which became Public Law 106-386, initially defined "domestic violence" for purposes of VAWA's grant programs as including "acts or threats of violence, not including acts of self-defense, committed . . . by a person who is or has been in a continuing social relationship of a romantic or intimate nature with the victim." H.R. 1248, § 2. During Committee markups, a manager's amendment changed the definition to exclude the reference to those persons in romantic or intimate relationships. Instead, a separate definition of "dating violence" was added to select VAWA programs. That definition tracks the definition of "dating partner" in the 2006 amendments, covering violence committed by a person "who is or has been in a social relationship of a romantic or intimate nature" as determined by the length of relationship, type of relationship, and frequency of interaction between the persons. *See supra* note 8. In published additional views, sixteen members of Congress expressed concern that dating violence had not been included in all of VAWA's grant programs. In doing so, those members stated that dating violence encompassed violence in same-sex relationships. *See* H.R. Rep. No. 106-891, at 85 (Additional Views) ("One of the most serious concerns we have with the committee-passed bill is its failure to expand the scope of VAWA funding to include programs designed to combat dating violence, including violence in same-sex relationships. As introduced, H.R. 1248 would have amended VAWA so that the term 'domestic violence' would have included dating violence, and violence between same-sex couples, a position which is strongly supported by all of the major domestic violence and sexual assault groups, the Department of Justice, the National Association of Attorneys General, and the U.S. Conference of Mayors." (footnotes omitted)). In other words, the additional views endorsed the position that a "social relationship of a romantic or intimate nature" includes such a relationship between two individuals who are the same sex. Nothing elsewhere in the House Report calls this

following factors: (i) the length of the relationship; (ii) the type of relationship; and (iii) the frequency of interaction between the persons involved in the relationship.").

reading into question. Subsequently, in the 2006 VAWA amendments Congress added the "social relationship of a romantic or intimate nature" language to VAWA's criminal provisions, defining both "intimate partner" and "dating partner" in terms of such relationships. The legislative history of this phrase in the 2000 House Report is thus consistent with reading the terms "intimate partner[s]" and "dating partner[s]" for purposes of section 2261, as amended, to include two individuals who are the same sex.

### III.

The text, relevant case law, and legislative history all support the conclusion that VAWA's three criminal provisions, 18 U.S.C. §§ 2261, 2261A, and 2262, apply to otherwise covered conduct when the offender and victim are the same sex. And the views we have received reach the same conclusion. Thus, for the reasons set forth above, we conclude that each of these provisions apply when the offender and the victim are the same sex.

/s/

DAVID J. BARRON
Acting Assistant Attorney General